UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| IDELLA HUGHLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:12-CV-274-TLS-CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | | |

**OPINION AND ORDER**

On May 31, 2012, Plaintiff Idella Hughley ("Hughley"), proceeding *pro se*, filed her complaint in this Court. On October 2, 2012, Hughley filed her opening brief asking this Court to enter judgment in her favor or remand this matter to the Commissioner. On January 10, 2013, Defendant Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed a response brief. Hughley filed a reply brief on January 23, 2013. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**I.  PROCEDURE**

On June 4, 2008, Hughley filed a Title II application for Disability Insurance Benefits ("DIB"), alleging that symptoms associated with a torn rotator cuff, anxiety, and thyroid problems caused her to become disabled on February 20, 2004. The claim was initially denied on October 31, 2008, and again upon reconsideration on January 6, 2009. Hughley appeared at a hearing before an administrative law judge ("ALJ") on July 27, 2010. The ALJ issued a decision

on September 20, 2010, determining that Hughley was not disabled under the Social Security Act. Specifically, the ALJ determined that Hughley last met the insured status requirements of the Social Security Act on March 31, 2009; that she did not engage in substantial and gainful activity during the period from May 20, 2008, through her date last insured of March 31, 2009; and that, through her date last insured, Hughley suffered from impairments considered to be severe, including keratoconus,[1] history of right rotator cuff tear, obesity, obstructive airway disease, and depression. Nevertheless, the ALJ determined that Hughley's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to Hughley's residual functional capacity ("RFC"), the ALJ determined that, based on the medical evidence, Hughley can perform light work as defined in 20 C.F.R. § 404.1567(b). However, the ALJ found that Hughley can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; must avoid concentrated exposure to cold, heat, humidity, and wetness; must avoid concentrated exposure to pulmonary irritants such as dust, fumes, odors, gases, chemicals, and poor ventilation; and can only occasionally reach overhead with her right arm; can occasionally understand, remember, and carry out only short, simple instructions that are not detailed or complex; is able to maintain attention and concentration to perform only simple, one-to-two step tasks for two hours at a time without requiring direction to task; and cannot perform work requiring frequent visual acuity or good depth perception. Furthermore, the ALJ found that Hughley is unable to perform her past relevant work, but retains the RFC to perform other jobs

---

[1] Keratoconus is identified as a deterioration in the shape of the cornea that causes blurred vision. *See* Mayo Clinic, Keratoconus, www.mayoclinic. com/health/keratoconus/DS01116 (last visited May 14, 2013).

2

that exist in significant numbers in the national economy. Specifically, the ALJ determined that, based on the Vocational Expert's ("VE") testimony, Hughley has the ability to perform the requirements of the following occupations: sales attendant (7,000 jobs in Indiana and 300,000 jobs nationwide); bakery worker (300 jobs in Indiana and 10,000 nationwide); and dining room attendant (3,000 jobs in Indiana and 150,000 nationwide).

On September 20, 2010, the Appeals Council denied Hughley's request for review of the ALJ's decision, thus making it the Commissioner's final decision. *See* 20 C.F.R. § 404.981; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Hughley filed a complaint in this Court on May 31, 2012, seeking review of the ALJ's decision. For the reasons stated below, the Court denies Hughley's motion to reverse or remand.

## II. ANALYSIS

### A. Facts

#### 1. Hughley's Background and Hearing Testimony

Hughley was forty-three years old on the alleged disability onset date and fifty years old at the time the ALJ denied her claim. She has a high school diploma and last worked in February 2004 as a teacher's aide. Prior to this, she worked as environmental aide in a hospital.

At her hearing, Hughley testified that her eyesight is her most prominent disability. She stated that she has keratoconus, a hereditary and progressive eye disease. She also testified that she has been advised that, while surgery may be an option, there is no guarantee that an operation would yield positive results, and that she has not opted for surgery for fear that it might worsen her vision. She also stated that she is sometimes unable to see things that are right in

3

front of her. However, despite her alleged poor vision, she testified that she continues to drive, but that driving is difficult—particularly at night.

Hughley also testified that she experiences shoulder pain nearly every day. She further stated that she injured her shoulder in a fall in February 2004, and that she was told that her delay in receiving surgery caused her shoulder to become "stiff." She also stated that the pain became worse when it rained or snowed. At her hearing, she did not indicate what medications were prescribed for her shoulder pain; however, she testified that she has been using a home TENS unit.[2]

Hughley testified that she suffers from back problems due to an automobile accident that occurred one and a half years prior to her hearing. While she has received chiropractic adjustment, she testified that the she sometimes experiences pain that extends down the back of her leg.

Hughley further stated that she sometimes has difficulty breathing and that she loses her voice. She alleged that dusty environments cause her to cough, and noted that particular smells make her "sick," such as the air near Gary, Indiana and a nearby ethanol plant. She also stated that an allergist once told her that she is allergic "to almost everything." (Tr. 49).

Hughley also stated that she is able to shower daily unless her shoulder is "really, really bad." She testified that, while she tries to help out as much as she can around the house, she needs her husband to help carry the laundry and often relies on her son to help with some chores. Hughley testified that she can stand for only five to seven minutes at a time on a bad day, and

---

[2] A TENS unit is defined as "a technique used to relieve pain in an injured or diseased part of the body in which electrodes applied to the skin deliver intermittent stimulation to surface nerves and blck the transmission of pain signals." *See* Medical Dictionary, TENS, http://medical-dictionary.thefreedictionary.com/TENS (last visited May 14, 2013).

4

that she has been advised not to carry more than three to five pounds.  She also stated that sitting is sometimes difficult.

While Hughley reported that she experiences anxiety, she stated that she does not use any mental health-related medications.  She also testified that she sometimes feels as if she cannot breathe, but, when asked how often this occurs, she failed to provide a response.  Hughley further indicated that she does not like enclosed rooms or elevators.

      2. <u>Hughley's Medical Evidence</u>

Hughley received arthroscopic surgery for her right shoulder on March 21, 2003.  After the surgery, Hughley underwent physical therapy.  On August 12, 2003, Hughley stated that her range of motion improved by at least 75%, and she was discharged from physical therapy.  On August 18, 2004, Hughley met with Dr. Demarais, who noted that, despite the fact that Hughley was not working at the time, she possessed the ability to continue to work without restrictions.  Dr. Demarais found that Hughley's range of motion was decreased in the shoulder and recommended physical therapy.  He also prescribed Hughley some pain relievers.  Hughley met with Dr. Demarais again on September 27, 2004, after complaining of right shoulder pain.  She indicated to Dr. Demarais that physical therapy had been ineffective.

Hughley was discharged from physical therapy on December 22, 2004, and opted to use a TENS unit for treatment, which she reported to be effective.  While more physical therapy was recommended, Hughley discontinued therapy due to insurance concerns.  Hughley continued to meet with Dr. Damarais through November 15, 2005.  She reported that she regularly took her pain medications and that she continued to use the TENS unit.  However, she reported that her symptoms had not improved and that cold and rainy weather aggravated her pain.

On October 5, 2005, Hughley received an examination from her optometrist, Dr. Wiarda, after complaining of unclear vision. Dr. Wiarda confirmed that Hughley suffered from bilateral cataracts, bilateral keratoconus, and a lazy eye. Dr. Wiarda estimated that Hughley best corrected vision was measured at 20/50 in her right eye and 20/20 in her left eye. Dr. Wiarda noted that Hughley "would not be considered visually disabled." (Tr. 560). Dr. Wiarda met with Hughley again during a follow up examination on January 12, 2006, and reported that Hughley had a corrected vision of 20/40 in her right eye and 20/25 in her left eye.

On March 1, 2007, Dr. Bartlett, another optometrist, completed a referral form for a corneal transplant on behalf of Hughley. However, he noted that, even with a transplant, "there are no assurances" that such an operation would improve her vision. (Tr. 583). There is nothing in the record indicating that Hughley obtained a referral consultation.

Hughley began receiving treatment from a third optometrist, Dr. Wade, in June 2007. Dr. Wade diagnosed Hughley with keratoconus but noted that, with the use of glasses or contact lenses, Hughley's vision could be corrected to 20/30 in her right eye and 20/20 in her left eye. Dr. Wade also noted that Hughley retained binocular vision and had good eye coordination. He ultimately noted that Hughley's keratoconus only made "seeing slightly more difficult" and determined it to be only a "slight handicap." (Tr. 342).

Hughley underwent pulmonary functioning testing on August 26, 2008, the results of which led the ALJ to find that Hughley's obstructive airway disease[3] constituted a severe

---

[3] Obstructive airway diseases include but are not limited to "COPD, which is characterized by chronic airflow limitation arising from airways disease and emphysema; and brochiolitis obliterans, a disease causing fixed obstruction involving the distal airways and alveolae." NIOSH Respiratory Diseases Research Program: Evidence Package for the National Academies' Review 2006-2007, 4.2 Obstructive Airways Disease, National Institute for Occupational Safety and Health, http://www.cdc.gov/niosh/nas/rdrp/ch4.2.htm (last visited May 16, 2013).

respiratory impairment. (Tr. 352–65). On September 3, 2008, Dr. Sices performed a pulmonary examination of Hughley during a consultative physical examination and reported that Hughley's pulmonary functioning was normal. At this same consultative examination, Dr. Sices found that Hughley's range of motion was decreased in her shoulder, that her shoulder strength was decreased to 40%, and that her right grip was decreased to 60%. While Hughley's finger manipulation was found to be normal, Dr. Sices stated that Hughley's right shoulder impairment affected her coordination. Nevertheless, Dr. Sices reported that, despite this impairment, Hughley was capable of carrying light objects. Dr. Sices further noted that Hughley's range of motion of her spine was normal and reported no evidence suggesting that she suffered from back limitations.

Hughley met with her primary care physician, Dr. O'Connell, several times between 2007 and 2008. During these examinations, Dr. O'Connell indicated that Hughley consistently complained of headaches. However, on one of these occasions, dated January 24, 2008, Hughley was also experiencing a cough, fever, and respiratory infection. Additionally, on a questionnaire dated December 25, 2008, Hughley reported that she infrequently suffered from slight headaches.

Hughley received a physical RFC assessment from Dr. Corcoran with the Disability Determination Services on October 30, 2008. Dr. Corcoran determined that Hughley retained the capacity to perform a restricted range of light work activity. Dr. Corcoran also determined that Hughley could occasionally lift and carry up to twenty pounds, could frequently lift and carry up to ten pounds, and could sit, stand, or walk for a total of six hours in an eight hour workday. Dr. Corcoran's findings was affirmed on June 5, 2009.

7

Hughley received chiropractic care from Dr. Kline on December 26, 2008, to treat her lower back pain. On the day of her treatment, Hughley completed a questionnaire indicating that, with the help of medication, her social life was normal, that she could manage her personal care, that her ability to sit and walk were unaffected, and that her pain seemed to decrease. However, she also reported that the pain caused her to lose sleep, and that even with medication, she was only able to lift light weights. She also reported that she experienced increased pain after standing for more than one hour at time. Hughley received physical therapy for this ailment until her final visit on May 18, 2009. On this date, Hughley reported that she felt much better and that exercise dramatically helped her. Dr. Kline noted that Hughley reported that she was feeling good, and that the range of motion of her back and spine was normal.

**B.      Standard of Review**

In reviewing disability decisions of the Commissioner of Social Security, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and based on the proper legal criteria. 42 U.S.C. § 405(g); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny the benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). A reviewing court may not substitute its own opinion for that of the ALJ's or re-weigh evidence; however, "the ALJ must

8

build a logical bridge from the evidence" to his conclusion. *Haynes*, 416 F.3d at 626. The ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

To prevail on a claim for DIB, a claimant must establish that she was disabled as of her date last insured. 42 U.S.C. § 423(a)(1)(D); *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As set forth in the Social Security Regulations, a five-step sequential evaluation process is used to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider whether: (1) the claimant is presently employed at a substantial gainful level; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairments meet or equal any impairment listed in the regulations; (4) the claimant is able to perform her past relevant work given her RFC; and (5) the claimant can adjust to other work in light of her RFC given her age, education, and experience. *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either Step Three or Five. *Briscoe*, 425 F.3d at 351–52. If the impairment or impairments fail to meet or equal a severe impairment listed by the Social Security Regulations at Step Three, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). "The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young*, 362 F.3d at 1000. In

9

making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record, including impairments determined to be non-severe. *Id.* at 1001; 20 C.F.R. § 404.1545(a)(1)–(3). At Step Four, the claimant must show that, based on her RFC, she is unable to perform any past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is unable to perform past relevant work, the ALJ will consider whether the claimant's RFC prevents her from performing other substantial gainful employment. *Id.* at § 404.1520(g). If the claimant can perform such employment under Step Five, she is considered not to be disabled. *Id.* The claimant bears the burden of proving Steps One through Four, whereas the burden at Step Five is on the Commissioner. *Young*, 362 F.3d at 1000.

### C. Issues for Review

There are two issues that this Court must resolve: (1) whether the ALJ properly determined Hughley's RFC; and (2) whether the ALJ properly determined that Hughley can perform other work in the national economy at Step Five.

#### 1. **The ALJ's determination of Hughley's RFC was based on substantial evidence.**

Hughley contends that the ALJ improperly evaluated her RFC. She further contends that the ALJ did not adequately address the limitations caused by Hughley's chronic back pain, shoulder pain, anxiety, and vision.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, and any other relevant evidence. SSR 96-7p. "Careful consideration must be

given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1512(c). Therefore, when the record does not support specific limitations or restrictions on a claimant's work-related activity, the ALJ must find that the claimant has no related functional limitations. SSR 96-8p.

Hughley contends that her chronic back and shoulder pain are more functionally limiting than the ALJ determined them to be. She cites the findings of Dr. Corcoran in arguing that her physical impairments limit her ability to function. Hughley states that these injuries prevent her from lifting heavy weights and substantially limit her ability to complete household chores. She alleges that these injuries became worse after being involved in an automobile accident in November 2010. She argues that, because of this pain, she can neither stand nor sit for long periods of time due to the pain.

However, Hughley fails to recognize that the ALJ addressed these issues when making its RFC determination. The ALJ made specific reference to Dr. Corcoran's finding that Hughley retained the capacity to perform a restricted range of light work activity and incorporated this finding into her RFC determination of Hughley. The ALJ accommodated the limitations caused by Hughley's shoulder and back pain by including restrictions precluding her from extreme climbing and limiting her to only occasional postural movements in her RFC. Additionally, the ALJ also made other references to the record that indicate that Hughley's back and shoulder pain do not altogether prevent her from being able to work. For example, the ALJ referenced Dr. Sices' evaluation of Hughley in September 2008, where he determined that Hughley had the

capability to carry light objects despite her shoulder pain. The ALJ also made reference to Hughley's alleged back impairments. For instance, the ALJ noted that Hughley's consultative physical examination in September 2008 failed to suggest any back limitations. Additionally, the ALJ noted that Hughley appeared to respond well to the chiropractic treatment that she received from December 2008 and May 2009. Despite this, the ALJ restricted Hughley to light work activity to accommodate any periods of back pain that she may experience.

Furthermore, with regard to Hughley's allegations that her back and shoulder pain increased after an automobile accident in November 2010, Hughley fails to recognize that the resulting injuries from this accident, even if they did significantly limit Hughley's ability to work, occurred subsequent to the ALJ's determination that Hughley was not disabled. This Court will not consider new and material evidence that was not previously presented to the ALJ. *See Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012). The ALJ issued its decision on September 20, 2010; however, Hughley's alleged accident did not occur until November 2010. Therefore, it would not have been possible for the ALJ to consider any injuries that might have been caused by this accident when it issued its decision. Additionally, this accident occurred in 2010, which was past March 31, 2009—Hughley's date last insured. Thus, Hughley is ineligible to receive DIB for these injuries.

Hughley also contends that her eyesight is a significantly limiting disability. She argues that the symptoms from her keratoconus and bilateral cataracts have significantly worsened over the years. She alleges that, because of these worsened conditions, she has to rely on the support of friends and acquaintances to type and assist in her case, and that driving has become difficult. However, the ALJ found that Hughley's decision to drive despite her allegedly failing eyesight

12

belied her argument. Additionally, ALJ specifically recognized that Hughley suffered from bilateral cataracts, and even recognized Hughley's keratoconus as a severe impairment. In the ALJ's decision, she discussed the findings of Dr. Wiarda and Dr. Wade, Hughley's optometrists, at length. For example, the ALJ noted Dr. Wiarda's findings that Hughley was not considered visually disabled, and that she maintained a vision 20/40 in her right eye and 20/25 in her left eye. The ALJ also noted the findings of Dr. Wade, who stated that glasses and contact lenses corrected Hughley's vision to 20/30 in the right eye and 20/20 in the left eye. Furthermore, the ALJ also discussed Dr. Wade's findings that Hughley retained good eye coordination, that keratoconus only made her ability to see "slightly more difficult," and that Hughley's vision was, altogether, only a "slight handicap." (Tr. 342). There is no other evidence in the record indicating that Hughley's vision substantially impairs her ability to work. Despite these findings, the ALJ gave Hughley the benefit of the doubt and, in her RFC determination, precluded Hughley from work requiring frequent visual acuity and depth perception.

Finally, Hughley argues that air conditioned and damp workplace environments affect the arthritis in her shoulder and back and make it particularly difficult for her to complete work related tasks. She also contends that her allergies and respiratory complications further contribute to her inability to work in such conditions. However, Hughley fails to make any reference to the record that indicates that these conditions substantially affect her ability to work. Furthermore, the ALJ specifically noted Hughley's allegations that her arthritis increased in cold and damp settings. Nevertheless, despite Hughley's allegations, the ALJ noted the findings of Dr. Sices, who stated that Hughley remained capable of carrying light objects. The ALJ also noted Dr. Sices's determination that Hughley's pulmonary functioning was normal. Additionally,

there is nothing in the record corroborating Hughley's allegations that she is allergic "to almost everything." (Tr. 49). Nevertheless, the ALJ incorporated pulmonary restrictions into Hughley's RFC, including limitations on Hughley's exposure to pulmonary irritants.

Altogether, Hughley points to no evidence that establishes limitations greater than those found by the ALJ and has failed to provide medical evidence indicating that her impairments are as limiting as she alleges. Additionally, the ALJ properly considered all of the relevant evidence of the case, including the medical evidence and Hughley's testimony, when she made Hughley's RFC determination. Therefore, the ALJ's determination regarding Hughley's RFC was proper and was based on substantial evidence.

### 2. **The ALJ properly determined that Hughley can perform other work in the national economy at Step Five.**

At Step Five, the ALJ must determine whether the claimant can perform other work given her age, education, RFC, and work experience. 20 C.F.R § 404.1520(a)(4)(v). At this step, the burden is on the Commissioner "to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Young*, 362 F.3d at 1000. In determining whether the government has met its burden, the ALJ often relies heavily on the Dictionary of Occupational Titles ("DOT") and the testimony of Vocational Experts ("VE"). *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The DOT, which is published by the Department of Labor, "classifies jobs based on a number of factors, such as worker actions, exertional level and skill requirements in order to facilitate the placement of applicants in positions that match their qualifications." *Id.* Social Security regulations dictate that ALJs must take notice of the DOT. *Id.*; 20 C.F.R. § 404.1566(d)(1); 20 C.F.R. § 416.966(d)(1). "Vocational Experts often supplement the information provided in the DOT by providing an

impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee*, 649 F.3d at 569.

In this case, the ALJ determined that, based on the DOT and the testimony of the VE, Hughley can perform other work that exists in significant numbers in the national economy. Specifically, the ALJ found that, based on Hughley's age, education, RFC, and work experience, Hughley has the ability to work as a sales attendant (7,000 jobs in Indiana, 300,000 jobs nationwide); bakery worker (300 jobs in Indiana, 10,000 jobs nationwide); and dining room attendant (3,000 jobs in Indiana, 150,000 jobs nationwide).

Hughley contends that the ALJ erred in determining that Hughley can perform other work in the national economy. She states that her severe impairments require her to rest and take breaks every thirty minutes, thus restricting her ability to complete job applications. Hughley particularly challenges the ALJ's determination that Hughley can perform work as a bakery worker.[4] Hughley argues that working in a bakery would be impossible due to her eye impairments and inability to life heavy objects. She also contends that the environment conditions of a bakery setting would adversely affect her allergies, thus precluding her ability to work in this occupation.

Despite Hughley's argument, she fails to cite any evidence in the record that indicates that she is unable to successfully complete job applications. Furthermore, she fails to cite any medical evidence in the record indicating that she is required to take rests every thirty minutes. Hughley also fails to recognize that the ALJ specifically accounted for her medical conditions

---

[4] Hughley also contends that she is unable to perform the occupational demands of an account clerk; however, the ALJ never determined this to be an occupation that Hughley can perform.

and RFC when identifying her ability to work as a bakery worker.[5] The ALJ noted that Hughley can only perform light work, that she must avoid concentrated exposure to irritants such as dust and fumes, and that she can only occasionally reach over her head. Even with these limitations, the ALJ determined that, based on the record as a whole, Hughley still has the ability to successfully fulfill the duties of a bakery worker.

Even if the ALJ mistakenly determined that Hughley can perform the occupational duties associated with a bakery worker, such a determination would not be a cause for remand. If it can be predicted "with great confidence" that on remand the ALJ would ultimately reach the same decision, then such a decision by the ALJ is harmless error. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The ALJ also determined that, other than a bakery worker, Hughley can also perform the work of a sales attendant and dining room attendant. These two occupations, standing alone, exist in significant numbers in the national economy. Hughley fails to make any argument whatsoever contending her ability to perform the requirements directly associated with these occupations.

Therefore, the ALJ's determination that Hughley is not disabled and can perform a significant number of jobs in the national economy given her age, education, RFC, and relevant work experience was based on substantial evidence. Specifically, the ALJ properly determined that, based on the record as a whole, Hughley has the ability to fulfill the duties associated with

---

[5] The DOT's job description of a bakery worker is as follows:
> Performs any combination of following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing. Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins. Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product. Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting. Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance. Notifies supervisor of malfunctions.

DOT 524.687-022.

the occupations of a sales attendant, bakery worker, and dining room attendant.

### III.    CONCLUSION

This Court concludes that the ALJ's decision is supported by substantial evidence and based on the proper legal criteria.  The ALJ's evaluation of Hughley's RFC was supported by sufficient medical evidence and was properly assessed.  Furthermore, the ALJ's determination that Hughley could perform other jobs within the national economy given her age, education, RFC, and relevant work experience was based on substantial evidence.  Therefore, Hughley's motion to reverse or remand is **DENIED**.  This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 16th day of May, 2013.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge